UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARTON DALE EBY, JR.,

        Petitioner,

v.                            Case No. 18-12056
                                   Honorable Linda V. Parker

GARY MINIARD,[1]

        Respondent.

_____/

## OPINION AND ORDER: (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS [ECF NO. 1]; (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

This is a habeas case brought pursuant to 28 U.S.C. § 2254.  On June 29, 2018, Barton Dale Eby, Jr. ("Petitioner'), a state prisoner in the custody of the Michigan Department of Corrections, filed through counsel a petition for habeas corpus relief.  The petition challenges his conviction in state court for first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(a).  Petitioner challenges the conviction on the grounds that his trial and appellate attorneys were constitutionally ineffective, and that prosecutorial misconduct violated his right to a fair trial.  For the reasons that follow, the Court denies the habeas petition.

_____

[1] The caption is amended to reflect the proper respondent in this case, the warden of the prison where Petitioner is currently incarcerated.  *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *see also* Rules Governing § 2254 Case, Rule 2(a), 28 U.S.C. foll. § 2254.

# I.     Facts and Procedural Background

## A. Trial testimony

On January 28, 2011, a jury in Michigan's St. Clair County Circuit Court convicted Petitioner of first-degree criminal sexual conduct, MCL 750.520b(1)(a) (victim under 13 years of age).  The victim was Petitioner's daughter who was seven years old at the time of the offense.  (ECF Nos. 5-7 at Pg ID 602.)  The trial court sentenced Petitioner to twenty-five to thirty-seven and a half years of imprisonment.  (ECF No. 5-8 at Pg ID 673-74.)

The victim's mother testified at trial that her daughter did not want to go to visitation with Petitioner and would cry when she was required to do so.  (ECF No. 5-7 at Pg ID 595.)  In July 2010, the victim's mother called the police following a conversation with her daughter.  (*Id*. at Pg ID 591.)  The mother also took her daughter to the Child Advocacy Center and to Children's Health Care, where she received a vaginal examination.  (*Id.* at Pg ID 592-93.)

Two prosecution witnesses, the victim's case worker and a police detective, observed the victim's forensic interview at the Child Advocacy Center.  Both testified that during the interview, the victim's demeanor changed from happy and talkative when discussing her mother's home to looking withdrawn, upset, or terrified when talking about Petitioner's.  (ECF No. 5-5 at Pg ID 337-44, 425.)

The victim herself, nine years old at the time of the trial, testified that Petitioner touched her private part with his finger under her clothing.  (ECF No. 5-7 at Pg ID 636.)  During the prosecutor's direct examination of the victim, Petitioner's attorney objected to the following question:

> Q.    Now, [victim], you mentioned to us that dad put his finger in your privates.
>
> A.    Yes.

(*Id.* at Pg ID 638.)  Defense counsel initially argued, "that's not what the young lady said." (*Id.*)  However, after asserting that the victim did not say, "[i]nside," he withdrew his objection, rather than explain further or seek clarification of the victim's testimony.  (*Id.*)

Defense counsel presented his opening statement after the prosecution rested, telling the jury at least three times they would hear from "two witnesses." (ECF 5-5 at Pg ID 442, 449, 455.)  Counsel stated that Petitioner would testify, even though he was not required to do so.  (*Id.* at Pg ID 454.)

Following the testimony of the first defense witness, the Petitioner took the stand and was sworn in.  His defense attorney asked him his name and how to spell it.  (*Id.* at Pg ID 505.)  The attorney then stated he had no further questions and turned Petitioner over to the prosecutor for cross-examination.  (*Id.*)  In response to the prosecutor's question whether she should cross-examine Petitioner "[a]bout his name[,]" the trial court stated that cross-examination would be "limited to what

was asked on direct." (*Id.*)  The prosecutor had no questions.  (*Id*. at 506.)  During

closing argument, defense counsel argued the prosecutor was not restricted in the

scope of cross-examination and could have "ask[ed] [Petitioner] anything she

wanted to."  (*Id.* at Pg ID 549-50.)

Before arriving at a verdict, the jury sent three questions to the trial court

judge, one of which was whether the prosecutor had a right to cross-examine

Petitioner.  (ECF No. 5-6 at Pg ID 573.)  The trial court, with the agreement of

both attorneys, reinstructed the jury on the roles of the prosecutor and defense

counsel, including the phrase "the Prosecutor has the right to cross-examine" any

defense witness.  (*Id.* at 574.)  The jury later reported it was unable to reach a

verdict.  (*Id.* at 576.)  Over defense counsel's objections and a motion for a

mistrial, the trial court provided the standard "deadlocked" jury instruction.  (*Id.* at

578.)  Approximately forty-five minutes later, the jury returned with a guilty

verdict as charged.  (*Id.*)

## B. Procedural history

On direct appeal, Petitioner raised three issues: (1) the trial court's use of the

deadlocked jury instruction violated his due process rights; (2) the testimony of

victim's case worker improperly bolstered her credibility; and (3) there was

insufficient evidence to support his conviction.  The court of appeals affirmed

Petitioner's conviction.  *People v. Eby*, No. 303784, 2012 WL 1649750, at *1

(Mich. Ct. App. May 10, 2012).  The Michigan Supreme Court denied leave to appeal "because [it was] not persuaded that the questions presented should be reviewed by this Court."  *People v. Eby*, 493 Mich. 891 (2012).

Petitioner then filed a motion for relief from judgment through counsel in the trial court.  There, he raised seven grounds for relief, two of which claimed Petitioner was denied his right to testify in his own defense.  He also asserted: (i) the testimony of witnesses who observed the victim's forensic interview was without foundation; (ii) the prosecutor should not have asked leading questions of the minor victim regarding the ultimate issue of penetration; (iii) several theories of trial and appellate counsel ineffectiveness; and (iv) that his due process rights were violated by the prosecution's failure to turn over exculpatory medical records indicating no injury or evidence of sexual abuse.  (ECF No. 5-9.)

Reviewing the motion, the trial court noted that because the rules governing post-conviction motions require establishing good cause for not raising the grounds for relief on direct appeal, each issue required determining whether appellate counsel was effective. [2]  The court denied relief on all issues but one, holding that appellate counsel had followed "sound appellate strategy."  (ECF No. 5-14 at Pg

---

[2] Petitioner notes in his reply brief that for purposes of the motion for relief from judgment, references to the trial court should be to the "successor" trial court, as the original judge at Petitioner's trial had retired by the time his motion for relief from judgment was filed.  (ECF No. 7 at Pg ID 1515.)

ID 864.)  The court ordered an evidentiary hearing on the outstanding claim: whether Petitioner's trial counsel interfered with his right to testify on his own behalf, which the court said raised "important issues of constitutional significance that may have required further investigation by appellate counsel." (*Id.* at Pg ID 864-65.)

Petitioner's trial and appellate counsel both testified at the evidentiary hearing, as did the trial prosecutor, Petitioner, and Petitioner's mother, who had retained trial and appellate counsel on Petitioner's behalf. (ECF No. 5-15.)  The trial attorney Marvin Barnett explained that his trial strategy of limiting Petitioner's testimony to the spelling of his name was intended to avoid making a direct attack on his daughter's testimony.[3] (*Id.* at Pg ID 897-98.)  Had the prosecutor elected (and been permitted) to cross-examine Petitioner, any challenges to the victim's credibility would appear to originate with the prosecutor, not Petitioner. (*Id.* at Pg ID 903.)  Barnett asserted that Petitioner understood and agreed with the strategy. (*Id.* at Pg ID 953.)

---

[3] Effective January 3, 2019, Barnett was disbarred from the practice of law for conduct unrelated to his representation of Petitioner.  *See* State of Michigan Attorney Discipline Board, Notice of Disbarment, Case No. 16-118-GA (Jan. 3, 2019), https://perma.cc/36RE-KCHG (last visited July 19, 2022). ; *see also Byrd v. Skipper*, 940 F.3d 248, 253 n.4 (6th Cir. 2019) (citations omitted) (granting habeas relief and noting that "[t]he Michigan Supreme Court has twice held that [Barnett] is not a credible witness.").

Appellate counsel testified that Petitioner never told him he felt "robbed" of his opportunity to testify or that he wanted to say more while on the stand.  (*Id.* at Pg ID 1057-60.)  Appellate counsel stated that if Petitioner had told him that Barnett prevented him from testifying, he would have prepared an affidavit and raised the issue on appeal.  (*Id.* at Pg ID 1058.)  Appellate counsel testified that he did not think that the defense attorney's trial strategy "was the right thing to do." (*Id.* at Pg ID 1063.)  However, he reviewed the transcript closely and determined that Barnett was not ineffective under federal and Michigan precedents.  (*Id.* at Pg ID 1060, 1063.)

Petitioner asserted at the evidentiary hearing that he was not aware of Barnett's plan; rather, he intended to tell his side of the story from the stand.  (*Id.* at Pg ID 1145.)  He also insisted that he raised this issue with his appellate attorney.  (*Id.* at Pg ID 1164-65.)  Petitioner acknowledged that he never let the trial court know that he was dissatisfied with trial counsel's performance or that he thought the maneuver violated his right to testify.  (*Id.* at Pg ID 1160.)

At the evidentiary hearing, the trial court held that Petitioner had not shown good cause for failing to raise on direct appeal the issues of Barnett's ineffectiveness and the denial of his right to testify.  (*Id.* at Pg ID  1192.)  It found that Petitioner's appellate attorney had noted the potential issue but determined it lacked merit.  (*Id.* at Pg ID 1186.)  Both the Michigan Court of Appeals and the

7

Michigan Supreme Court denied Petitioner's applications for leave to appeal the trial court's ruling denying relief.  *People v. Eby*, No. 335298 (Mich. Ct. App. May 12, 2017) (unpublished opinion and order); *People v. Eby*, 501 Mich. 1036 (2018).

Petitioner thereafter filed a timely application for the writ of habeas corpus. Through counsel, he raises the following grounds for relief:

> I.   Judge West's Denial of 6.500 Relief Was an Unreasonable Application of Supreme Court Precedent Because Petitioner Was Denied His Sixth Amendment Right to Effective Assistance of Counsel When: (1) His Trial Counsel Called Him to the Stand and Asked No Questions, Depriving Petitioner of His Fundamental Right to Testify and (2) His Trial Counsel Withdrew His Objection to the Prosecution's Misstatement of the Child Victim's Testimony.
>
> II.  Judge West's Denial of Petitioner's 6.500 Motion Was An Unreasonable Application of Supreme Court Precedent Because Petitioner Was Denied His Due Process Right to a Fair Trial When the Prosecutor Knowingly Misstated the Testimony of the Child Victim on an Element of the Offense.
>
> III. Petitioner's Appellate Attorney Gerald Lorence Was Ineffective When He Failed to Raise in Petitioner's Direct Appeal Issues I and II.

(ECF No. 1 at Pg ID 17-18.)

## II.   Standard or Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the standard of review applicable to Petitioner's application for habeas relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state-court decision satisfies the "contrary to" clause if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Likewise,

> [a] state-court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," [*Williams*, 529 U.S.] at 407-08 . . . or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context," *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir.2000).

*Murphy v. Ohio*, 551 F.3d 485, 494 (6th Cir. 2009). The Supreme Court has cautioned, however, that "evidence introduced in federal court has no bearing on

§ 2254(d)(1) review." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011). Thus,

where, as here, "a claim has been adjudicated on the merits by a state court, a

federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the

record that was before that state court." *Id.*

Finally, with respect to the "unreasonable determination" clause, 28 U.S.C.

§ 2254(d)(2):

> the question . . . "is not whether a federal court believes
> the state court's determination was incorrect but whether
> that determination was unreasonable—a substantially
> higher threshold." *Schriro v. Landrigan*, 550 U.S. 465,
> 473 . . . (2007). . . . [And] "the petitioner must show that
> the resulting state court decision was 'based on' that
> unreasonable determination." *Rice v. White*, 660 F.3d 242,
> 250 (6th Cir. 2011).

*Hill v. Shoop*, 11 F.4th 373, 384 (6th Cir. 2021); *see also* 28 U.S.C. § 2254(e)(1)

(explaining that "determination[s] of . . . factual issue[s] made by a State court

shall be presumed to be correct" but that "th[is] presumption of correctness [can be

rebutted] by clear and convincing evidence").

In conducting the § 2254(d) analysis, courts must be mindful "that even a

strong case for relief does not mean the state court's contrary conclusion was

unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (citing *Lockyer v.

Andrade*, 538 U.S. 63, 75 (2003)). Rather, under AEDPA, "[a] state court's

determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."

*Id*. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Because the requirements of clearly established law are to be determined solely by Supreme Court precedent, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam) (quoting 28 U.S.C. § 2254(d)(1)); *see also Lopez v. Smith*, 574 U.S. 1 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Nor does AEDPA "require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). Furthermore, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington*, 562 U.S.

11

at 98.  Where the state court's decisions provide no rationale, the burden remains on the habeas petitioner to demonstrate that "there was no reasonable basis for the state court to deny relief." *Id*.

However, when a state court has explained its reasoning, that is, "[w]here there has been one reasoned state judgment rejecting a federal claim," federal courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Accordingly, when the last state court to rule provides no basis for its ruling, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and apply *Ylst*'s presumption.  *Id*.  The "look through" rule applies whether the last reasoned state court opinion based its ruling on procedural default, *id.* at 1194 (citing *Ylst*, 501 U.S. at 803), or ruled on the merits.  *Id*. at 1195 (citing *Premo v. Moore*, 562 U.S. 115, 123–33 (2011)) (citation omitted).

Finally, a state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181

(2011).

### III.    Analysis

The state appellate courts denied Petitioner's applications for leave to appeal in standard form orders which provided no explanation for their decisions.  *See People v. Eby*, No. 335298 (Mich. Ct. App. May 12, 2017) (unpublished order); *People v. Eby*, 501 Mich. 1036 (2018).  However, the trial court explained its reasoning for the denial of Petitioner's motion for relief from judgment on the record at the evidentiary hearing and in its opinion and order.  (*See* ECF No. 5-15 at Pg ID 1185-92; ECF No. 1-2.)

The trial court's order on the motion for relief from judgment represents "reasoned state judgment[s]."  *Wilson*, 138 S. Ct. at 1194 (quoting *Ylst*, 501 U.S. at 803).  Accordingly, the Court will "look through" the appellate court orders denying leave to appeal those decisions and presume those courts adopted the trial court's reasoning.  *Id*.

### A. Ineffective assistance of trial counsel

#### 1.    *Denial of Petitioner's right to testify*

After promising in opening argument that Petitioner would testify, Petitioner's trial counsel called him to the stand and asked only for Petitioner to state his name and spell it.  Petitioner argues he was deprived of his fundamental right to testify, his Sixth Amendment right to effective assistance of counsel, and

13

that the trial court's denial of relief was an unreasonable application of Supreme Court precedent.

Generally, habeas claims of ineffective assistance are evaluated under a "doubly deferential" standard. *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer of deference is the familiar deficient performance plus prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). That is, a habeas petitioner must show "that counsel's representation fell below an objective standard of reasonableness[,]" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Lafler*, 494 F. App'x 526, 532 (6th Cir. 2012) (per curiam) (quoting *Strickland*, 466 U.S. at 694)). *Strickland* requires a "'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689).

AEDPA provides the second layer of deference, under which a federal habeas court may "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Id.* at 226 (citing *Burt*, 571 U.S. at 24). "The pivotal question is whether the state court's application of

14

the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101.

The Sixth Circuit and another court in this district evaluated the same trial tactic by Barnett in another case in which he represented a defendant in a trial in federal court. *See United States v. Robinson*, No. 05-1936, 2007 WL 2112787 (6th Cir. July 20, 2007); *Robinson v. United States*, 744 F. Supp. 2d 684 (E.D. Mich. 2010). Barnett told the jury the defendant would "get on the witness stand and . . . testify truthfully." *Robinson*, 2007 WL 2112787, at *2. Barnett then called the defendant to the stand, asked only for his name, and then rested the defense. *Id*. The defendant was convicted of being a felon in possession of ammunition. *Id*. at *1. The Sixth Circuit affirmed his conviction, but denied his ineffective assistance claim as premature, because the record was inadequate. *Id*. at *4, *6.

The defendant subsequently raised the issue of ineffective assistance of counsel before the district court in a motion to vacate his conviction and sentence under 28 U.S.C. § 2255. *Robinson*, 744 F. Supp. 2d at 689. The court held an evidentiary hearing at which it heard testimony from both Barnett and the petitioner. *Id*. at 686-87. Barnett "testified during the evidentiary hearing that it was a strategic choice to put [petitioner] on the stand only to say his name." *Id*. at 691.

15

The district court first reviewed case law in several circuits in which an attorney's "unfulfilled promise to the jury" supported finding ineffective assistance of counsel. *Id*. at 690-91 (collecting cases). It concluded that "while a failure to present evidence that was promised to the jury by trial counsel during the opening statement may, under certain circumstances, be unreasonable and/or prejudicial, it may not always constitute a constitutional deprivation of the assistance of counsel." *Id*. at 691. The district court did not find Barnett to be credible in his explanation at the evidentiary hearing for his use of the strategy or his assertion that the defendant agreed with its use. *Id*. at 691-92. It concluded Barnett was unreasonable for not permitting the defendant to testify at the trial court in fulfillment of his promise to the jury. *Id*. at 693. However, it found regarding the second prong of *Strickland* that "Barnett's broken promise to the jury—without more—is insufficient to establish a reasonable probability that but for Barnett's commentary to the jury, the result of the proceeding would have been different." *Id*.

The district court also reviewed the petitioner's claim of ineffective assistance for being denied his right to testify by Barnett. The court reasoned that this claim also failed because the defendant "at no point gave the [c]ourt any indication that he wanted to testify and/or that he disagreed with his lawyer's strategic decision." *Id*. at 696. The court concluded that "absent anything in the

16

record evidencing the contrary, the [c]ourt must assume that [defendant] waived his right to testify."[4] *Id*. (citing *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).); *see also Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009).  The court, therefore, concluded that the petitioner had not shown Barnett's deficient performance.  *Id*.

The circumstances here are nearly identical.  Barnett promised the jury that Petitioner would testify, but by asking only his name and how to spell it, he never allowed him the opportunity to do so, thus breaking his promise.  Further, like the petitioner at the district court in *Robinson*, Petitioner acknowledges that he did not inform the trial court of his dissatisfaction with Barnett's strategy.  (ECF No. 5-15 at Pg ID 1160.)  Similarly, because Petitioner never informed the trial court otherwise, this Court must also presume Petitioner consented to the strategy.  *See Webber*, 208 F.3d at 551; *see also Hodge*, 579 F.3d at 639 ("Th[e] court entertains a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client.")

---

[4] The district court in *Robinson* ultimately noted that the petitioner had served most of his prison sentence after a jury trial "where he was not afforded his Sixth Amendment right to the effective assistance of counsel." *Id*. at 697.  It held that the petitioner was entitled to relief under 28 U.S.C. § 2255.  *Id*.  However, the court's holding was based on Barnett's unfulfilled promise to the jury coupled with his failure to investigate his client's case properly.  *Id*. at 695.

Petitioner's testimony to the contrary at the post-conviction evidentiary hearing cannot overcome that presumption.  *Hodge*, 579 F.3d at 639 (defendant's "present allegations that he wanted to testify and was prevented from doing so do not suffice to overcome the presumption that he assented to the tactical decision that he not testify."); *see also Webber*, 208 F.3d at 551(citations omitted) ("Barring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record."); *United States v. Stove*r, 474 F.3d 904, 909 (6th Cir. 2007) ("Because [d]efendant . . . did nothing to alert the trial court of his desire to testify, the trial court correctly presumed that Defendant Stover waived that right.")  *Webber* explained the actions a defendant must take to overcome that presumption:

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel.  *At base, a defendant must "alert the trial court"* that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand.  When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct.  Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*Id.* (citations omitted) (emphasis added).  However, the Court notes that at the evidentiary hearing, Petitioner *and* his mother testified that he wanted to testify at trial and tell his side of the story.  (ECF No. 5-15.)  Further, they both explained that Barnett did not explain his strategy or his intention to only ask the Petitioner's name.  (*Id.*)

Even in *Robinson v. United States*, 744 F. Supp. 2d 684 (E.D. Mich. 2010), a decision highly critical of Attorney Barnett's performance, the court did not find Robinson had overcome the presumption of the attorney's effectiveness, because "Robinson at no point gave the Court any indication that he wanted to testify and/or that he disagreed with his lawyer's strategic decision." *Id.* at 696.  Here, Mr. Eby did not inform the court, either during trial, or even at sentencing, about the fact that he wanted to testify but was not permitted to by Barnett. *See* Trial Tr., 1/27/2011, ECF No. 5-5, PageID.506; Sent. Tr., ECF No. 5-8, PageID.673 (Petitioner states only, "I didn't do this.").  Mr. Eby and his mother's testimony *after the fact*, while consistent, do not meet *Webber*'s requirements.

Barnett has been found multiple times to have invoked this "name only" testimony strategy, and on two of those occasions, courts found in the defendants' favor. *See Robinson*, *supra*; *People v. Terrell*, No. 303717, 2014 WL 1320151, at *4 (Mich. Ct. App. Apr. 1, 2014). Both cases are distinguishable on both *Strickland* prongs—performance and prejudice.   *See People v. Terrell*, No.

19

303717, 2014 WL 1320151, at *4 (Mich. Ct. App. Apr. 1, 2014) ("Accordingly, we conclude that defense counsel's failure to elicit defendant's version of the events deprived him of an important and likely effective defensive tool.")  Regarding performance, the courts in both *Robinson* and *Terrell* found Barnett not to be credible at evidentiary hearings investigating the petitioner's claims of ineffectiveness. *Robinson*, 744 F. Supp. 2d at 691-92; *Terrell*, 2014 WL 1320151, at *3.  In *Terrell*, on remand, the court of appeals did not make its own finding but applied the Michigan Supreme Court's findings "that defense counsel did not testify credibly at the *Ginther* hearing, and that the decision to forego calling an expert was not legitimate trial strategy," because they were "settled matters . . . as law of the case." *Id.*

In Mr. Eby's case, the trial court heard his testimony along with that of Barnett and Eby's mother.  Unlike *Terrell* and *Robinson*, that court did not find Barnett *not* to be credible.  Instead, it observed that criminal sexual conduct cases are "a thing unto their own," "difficult in and of themselves," and even more so in the circumstances of a child victim because "jurors tend to like and believe [their] testimony . . ." ECF No. 5-15, PageID.1188-89.  As a result, while it would "probably" have not pursued the same strategy, the court acknowledged the tactic was intended to minimize those factors. *Id.* at 1189. While it called Barnett's approach "unorthodox" and "[v]ery unusual[,]" the court ultimately concluded the

tactic was not "at the bottom or below an acceptable standard to the point where it is an ineffective trial strategy." *Id.* at PageID.1191, 1192.  While the court did not say so expressly, by finding that Barnett did not render ineffective assistance in this regard, the issue would likely have been unsuccessful on appeal.  Therefore, the appellate attorney was not ineffective for failing to raise the issue.  As noted during the evidentiary hearing, the trial court also found the appellate attorney was aware of the issue but made a conscious, strategic decision not to raise it.  *Id.* at PageID.1186-87.

Because the trial court did not find that Barnett's performance fell below objective professional standards, it did not address *Strickland*'s second prong, prejudice.  But on the question of prejudice, *Terrell* and *Robinson* are again distinguishable.  In both cases, the prejudice findings were not based solely on the denial of the defendants' right to testify.  In fact, the *Robinson* court did not find for the petitioner on that particular claim at all.[5]  Instead, Barnett was found ineffective by the combination of failing to meet his promise to the jury that he would place Robinson on the stand to testify, 744 F. Supp. 2d at 692, and his "failure to investigate possible witnesses who would have corroborated Robinson's

---

[5] As explained in section 1., the court in *Robinson* held the petitioner had "not shown that Barnett's conduct constituted deficient performance with regard" to his claim he was denied his right to testify. 744 F. Supp. 2d at 696.

version of events and directly attacked the credibility of the officers[.]" *Id.* at 693.
Barnett failed to investigate despite Robinson providing witnesses' names and
phone numbers and even bringing witnesses to Barnett's office. *Id.* at 694-95.

In *Terrell*, the attorney's ineffective assistance included failing to call an
expert witness whose "testimony . . . would have harmonized with, and
strengthened, defendant's account" of his co-defendant being the lone shooter.
*Terrell*, 2014 WL 1320151, at *4.

Petitioner Eby's testimony at the *Ginther* hearing was non-specific as to the
"story" to which he would have testified at trial.  He asserts only that he would
have been able to refute every witness, including his daughter. *See* Evid. Hr'g Tr.,
ECF No. 5-15, PageID.1157. This contrasts with very specific facts, which refuted
the government's evidence provided by the defendants in both *Robinson* and
*Terrell*.  Unlike *Robinson* and *Terrell*, the record before this court does not
demonstrate that the state courts were unreasonable in finding that Petitioner did
not meet the requirements to establish Barnett's ineffectiveness.  The trial court did
not find Barnett's performance fell below objective standards, and as such, this
Court finds that Petitioner has not shown a reasonable probability of a different
outcome if he were permitted further testimony.

**2.  *Defense counsel's withdrawal of objection to the prosecution's
misstatement of the child victim's testimony.***

Petitioner's second theory of ineffective assistance of trial counsel involves victim's testimony about the specific incident which led to the first-degree criminal sexual conduct charge.  Petitioner argues the prosecutor knowingly misstated the victim's testimony as she questioned her.  Trial counsel initially objected, but then withdrew the objection rather than clarify it for the trial court, and rather than clarify the victim's testimony.  (ECF No. 5-7 at Pg ID 634.)  Petitioner argues that counsel was ineffective when he withdrew his objection to what Petitioner also argues was prosecutorial misconduct (*See* discussion *infra* section B).

The victim, nine years old at the time of the trial, testified on the second day. The prosecutor asked the victim about Petitioner's actions:

> Q.    Now, was there ever a time, . . . that something happened at dad's house that made you uncomfortable?
>
> A.    Yes.
>
> Q.    Okay. What happened?
>
> A.    He touched me.
>
> Q.    Okay. . .
>
> Q.    Who is "he", . . .? Who, who touched you?
>
> A.    My dad.
>
> Q.    And where did he touch you at?
>
> A.    My private.
>
> Q.    Okay. What do you, what do you do with your private part? Your privates?

> A.   I go to my – the bathroom. . .
>
> Q.   What part of his body touched your privates?
>
> A.   His finger.
>
> Q.   Okay. Was it over your clothes?
>
> A.   Yes. No. Under.

(ECF No. 5-7, at Pg ID 636.)  After the prosecutor asked the victim a series of

questions to confirm she knew the difference between over and under (*Id*. at Pg ID

637), the examination returned to the circumstances of the charged offense:

> Q.   Okay. So he – when he, when he touched you, . . . was it
>      over or under your clothes?
>
> A.   Under.
>
> Q.   Okay. Was it over or under your underwear?
>
> A.   Under.
>
> * * *
>
> Q.   And how did it feel when his finger touched your private
>      parts?
>
> A.   It felt uncomfortable.
>
> Q.   Do you remember how old you were when this happened?
>
> A.   I think, I think I was seven.

(*Id*.)  The victim testified that the incident occurred in the living room, and that she

was "kind of off the chair and on his lap."  (*Id*. at Pg ID 638.)  Direct examination

continued:

> Q.    Now, . . ., you mentioned to us that dad put his finger in your privates.
>
> A.    Yes.

(*Id.* at Pg ID 638.)   At this point, trial counsel objected:

> MR. BARNETT: Objection.  Very – strike the question. It's not what she said.  That is not what she said, Judge.  I ask that she not rephrase the testimony of this witness.  I don't know – I don't think that she said the word—Judge, I ask that she rephrase that question.  Did she not restate – she did not restate what she thought the young lady said because that's not what the young lady said and I ask that you rephrase that question.
>
> THE COURT: I'm not sure that everybody shares your opinion that was the original question.  I don't remember that.
>
> MR. BARNETT: I'm talking about her answer.  Not the Prosecution's question.  She's – she capsizes the alleged testimony of the witness and forms it in her question as if it were asked.
>
> PROSECUTOR: Which is –
>
> THE COURT: Well, I tell you what. I looked in the mirror this morning and I, I didn't see my dumb face on but I am just not understanding your objection.
>
> MR. BARNETT: Well, then I must have mine on, your Honor.
>
> THE COURT: I'm sorry, what?
>
> MR. BARNETT: I'll withdraw it.  I can't – apparently I can't articulate my objection.  I'll withdraw it.
>
> THE COURT: Well, I, I, I just – I mean, she said –
>
> MR. BARNETT: The young lady used –

THE COURT: She. Who is the she?

MR. BARNETT: The Prosecutor said: Inside.  And the witness didn't say that, Judge. I know what the witness said.  I think I have an opinion, and if that's what – I'm going to withdraw it.  The jury heard it.  I'm going to withdraw my objection.

THE COURT: Okay, thank you. Mrs. Deegan.

PROSECUTOR: Well, if – we can, we can clarify that.

MR. BARNETT: No, I don't want to clarify nothing. I withdraw my objection. . . .

THE COURT: Just ask the questions, Mrs. Deegan.

BY PROSECTUOR:

Q.    [W]hen dad put his finger into your privates, what part of your body did he touch?

A.    My private.

Q.    Okay. Your private?

A.    Yeah.

(*Id.* at Pg ID 638-39.)

Petitioner argues that had defense counsel not withdrawn his objection, the trial court would have recognized that the prosecutor's questions were "highly improper."  (ECF No. 1 at Pg ID 60.)  Respondent counters that by objecting and then withdrawing his objection, trial counsel likely sought "to strategically highlight to the jury that the victim never testified that [Petitioner] penetrated her." (ECF No. 4 at Pg ID 127.)

Again, Petitioner must show that defense counsel's performance was unreasonable, and that absent those errors, the outcome would have been different. *Lafler*, 566 U.S. at 163.  Petitioner must also overcome the "strong presumption" that counsel's performance was reasonable.  *Abby*, 742 F.3d at 226 (citing *Strickland*, 466 U.S. at 689).

Here, Barnett's objection to the prosecutor's questions was reasonable because she appeared to misstate the victim's prior testimony.  But Petitioner's claim of error, Barnett's decision to withdraw the objection, does not fall below *Strickland*'s standard of reasonable performance.  By withdrawing his objection rather than seeking clarification of the victim's testimony, Barnett prevented the prosecutor from asking the victim in a more direct and inculpatory manner the ultimate question of whether Petitioner had indeed penetrated her "private part" with his finger.  His decision not to pursue that clarification was strategic and reasonable.

Nor can Petitioner establish prejudice for Barnett withdrawing his objection.  Having raised the objection in the first place, he brought the improper question to the trial court's (and the jury's) attention.  Had Barnett sought clarification, the victim's subsequent testimony might have exonerated Petitioner from the charge of penetration, or she might have provided clearer and more inculpatory evidence

27

against Petitioner.  Because of this uncertainty, Petitioner cannot establish the "reasonable probability" of a different outcome the *Strickland* standard requires.

Again, AEDPA directs a federal habeas court to "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Abby*, 742 F.3d at 226 (citing *Burt*, 571 U.S. at 24); *see also Harrington*, 562 U.S. at 101.  Because Barnett's withdrawal of his objection was strategic, and because Petitioner cannot demonstrate he was prejudiced by it, the trial court was not unreasonable in rejecting this claim.

## B. Prosecutorial misconduct

Petitioner next argues the prosecutor committed misconduct by knowingly misstating the victim's testimony in her direct examination questions.  In general, prosecutorial misconduct violates the Constitution only if a prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168 (1986)).  On habeas review, "[r]eversal is required only if the prosecutor's misconduct is so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant."  *Key v. Rapelje*, 634 F. App'x 141, 147 (6th Cir. 2015) (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006)).

Petitioner is correct that misstatements of the evidence by a prosecutor may be prejudicial. But the cases he cites address improper remarks during argument, not questions to witnesses. *See*, *e.g.*, *United States v. Young*, 470 U.S. 1, 18 (1985) ("improper prosecutorial arguments"); *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001) ("prosecutor's conduct during closing arguments").

Here, the prosecutor's purported misstatements of the evidence occurred while she questioned the nine-year-old victim by asking leading questions, which she was permitted to do. "It is well recognized that the use of leading questions during the direct examination of a witness falls within the sound discretion of the trial court." *United States v. Pugh*, 404 F. App'x 21, 28 (6th Cir. 2010) (citing *United States v. Shoupe*, 548 F.2d 636, 641 (6th Cir. 1977)). Courts permit leading questions to vulnerable witnesses, such as "a child sexual abuse victim," like the victim. *Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005) (citations omitted).

The victim responded affirmatively to the prosecutor's leading questions:

> Q.    Now, . . . you mentioned to us that dad put his finger in your privates.
>
> A.    Yes.
>
> * * *
>
> Q.    [W]hen dad put his finger into your privates, what part of your body did he touch?
>
> A.    My private.

(ECF No. 5-7 at Pg ID 638-39.)

The standard to find prosecutorial misconduct is whether Petitioner was denied a fair trial or due process. Arguably, the prosecutor misstated the victim's testimony in her leading questions to the victim, that is, because the victim herself did not expressly state that Petitioner had inserted his finger in or (stet) inside her. However, Petitioner was afforded due process by the fact that defense counsel had the opportunity to object (which he did, although he withdrew the objection) or to cross-examine the victim to correct those apparent misstatements by the prosecutor. That defense counsel elected not to take those actions does not mean Petitioner was denied a fair trial.

Further, the prosecutor's closing argument mentioning the testimony was not improper. The prosecutor was allowed to use leading questions because of the victim's status as a child sexual-assault victim. The victim affirmatively responded to the prosecutor's leading questions regarding whether Petitioner penetrated her genital opening. As a result, the prosecutor did not misrepresent evidence in arguing that the victim testified that Petitioner's finger was "in" or "inside" her private part.

As such, Petitioner was not denied due process by the prosecutor's actions, and he is not entitled to habeas relief on this issue.

## C. Ineffective assistance of appellate counsel

30

In his final claim, Petitioner argues that his appellate attorney was ineffective because he failed to raise on direct appeal Petitioner's two theories of ineffective assistance of trial counsel.  The trial court disagreed, finding appellate counsel's decisions had been strategic and finding that good cause had not been shown as to why this matter wasn't raised at the Court of Appeals level.  (ECF No. 5-15 at Pg ID 1185-.)

Longstanding precedent supports "[e]xperienced advocates . . . winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983).  This is so because "[a] brief that raises every colorable issue runs the risk of burying good arguments," and because "impos[ing] on appointed counsel a duty to raise every 'colorable' claim suggested by a client" undermines the "goal of vigorous and effective advocacy."  *Id*. at 753, 754.

Petitioner's appellate counsel testified at the motion for relief from judgment hearing that he evaluated the factual circumstances and applicable law regarding trial counsel's interference with his right to testify and determined the issue lacked merit.  (*See* ECF No. 5-15 at Pg ID 1021-1070.)  Appellate counsel explained that he had spoken to the Petitioner about his right to testify and whether Barnett had advised him of this right before trial, of which he responded affirmatively.  (*Id*. at Pg ID 1056-57.)  He stated that Petitioner told him that he did not wish to testify

31

based on Barnett's advice and that he could not explain it when Barnett called him to the witness stand.  (*Id.*)  Appellate counsel further testified that the Petitioner "never indicated . . . by words the first time that [he] sat down and discussed this appeal with him or thereafter any desire to have had to testify, to testify and being deprived of his rights to testify."  (*Id.* at Pg ID 1057-58.)

Further, trial counsel's withdrawal of his objection to the phrasing of the prosecutor's questions was a strategic call, and as such, did not present a viable claim of ineffective assistance on appeal.  Accordingly, appellate counsel determined that these issues were weaker than the issues he did raise—insufficient evidence, the use of a deadlocked jury instruction, and improper bolstering of a prosecution witness.  (*See Eby*, 2012 WL 1649750.)

Again, the standard when evaluating a claim of ineffective assistance of counsel in the habeas context is not whether this Court finds counsel to have been ineffective, but whether the state court was unreasonable to find that he was not. The state trial court's determination that appellate counsels' strategic decisions did not violate *Strickland* was not unreasonable.

**D.    Conclusion**

For the reasons set forth above, the Court concludes that Petitioner fails to set forth grounds entitling him to habeas relief.

**E.  Certificate of appealability and *in forma pauperis* status on appeal**

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A federal district court must decide whether to issue a certificate of appealability when it issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To demonstrate such a denial, a petitioner must show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court is denying Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right for the reasons stated in this opinion. Reasonable jurists would not find it debatable whether Petitioner received ineffective assistance of counsel nor whether he was denied due process and a fair trial because of prosecutorial misconduct. However, because an appeal could be made in good faith, the Court will grant Petitioner leave to appeal *in forma pauperis*. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Accordingly,

**IT IS ORDERED** that the Court **DENIES** Petitioner's application for the writ of habeas corpus.

**IT IS FURTHER ORDERED** that the Court **DENIES** Petitioner a certificate of appealability but **GRANTS** him leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: November 1, 2022